UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| TROY F., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-362-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Troy F. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act.[1] *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 27).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 18, 19. Plaintiff also filed a reply brief. *See* ECF No. 26. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 18) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 19) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed applications for DIB and SSI on August 28, 2015, alleging disability beginning August 23, 2011, (the disability onset date), due to: "(1) blindness in right

---

[1] Plaintiff concurrently filed an application for social security income ("SSI") under Title XVI. However, as discussed further below, a previous disability decision found Plaintiff disabled beginning March 10, 2018, awarding benefits as of March 11, 2018, the date Plaintiff turned age 55. Tr. 30.

eye; (2) status post lumbar fusion; (3) chronic low back pain; (4) learning disability; (5) depression; (6) anxiety; (7) heart problems; and (8) status post heart stent placement." Transcript ("Tr.") 61-62, 137-53, 196. Plaintiff's claim was denied initially on March 4, 2016 (Tr. 85-100), after which he requested an administrative hearing (Tr. 102-03). On February 14, 2018, Administrative Law Judge Susan G. Smith ("ALJ Smith") conducted a video hearing from Alexandria, Virginia. Tr. 19. Plaintiff appeared and testified from Buffalo, New York, and was represented by Lewis L. Schwartz, ("Mr. Schwartz") an attorney. *Id*. Michael C. Dorsey, an impartial vocational expert, also appeared and testified. *Id*. At the hearing, Mr. Schwartz amended Plaintiff's alleged onset date to September 30, 2012. Tr. 39.

On August 20, 2018, ALJ Smith issued a partially favorable decision, finding Plaintiff disabled beginning March 10, 2018, but denying benefits for the closed period from September 30, 2012 through March 10, 2018. Tr. 30. On November 25, 2019, the Appeals Council denied Plaintiff's request for further review (Tr. 1-6), making ALJ Smith's August 20, 2018 decision the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

Thereafter, on December 29, 2019, Plaintiff filed a complaint in the United States District Court for the Western District of New York, Case No. 1:19-cv-01719-FPG. Prior to the filing of any briefs, the parties stipulated to remand the case for further administrative proceedings, and a Stipulation and Order for Remand was issued on March 16, 2020 (Tr. 1585-86), with a judgment issued on March 18, 2020 (Tr. 1587).

The Appeals Council then issued a Remand Order on July 1, 2020, vacating ALJ Smith's August 20, 2018 decision. Tr. 1590-94. The Appeals Council ordered the Administrative Law Judge on remand to:

- Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting

application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c).

- Give further consideration to the nontreating source opinion from Margaret Desmarais, FNP, pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence.

- If warranted, give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12 and 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

Subsequently, on December 2, 2020, Administrative Law Judge Bryce Baird ("the ALJ") conducted a telephonic hearing.[2] Plaintiff appeared and testified via telephone and was again represented by Mr. Schwartz. Tr. 1492. Also appearing and testifying telephonically were Gerald P. Koocher, an impartial medical expert, and Joseph Young, an impartial vocational expert. *Id*.

On December 22, 2020, the ALJ issued an unfavorable decision, finding Plaintiff not disabled for the closed period from September 30, 2012 through March 10, 2018. Tr. 1489-1509. Plaintiff thereafter commenced the present lawsuit.

---

[2] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15, 312.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically

equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the

"Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing

and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ

determines the claimant's residual functional capacity, which is the ability to perform physical or

mental work activities on a sustained basis notwithstanding limitations for the collective

impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits

him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in his December 22, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since September 30, 2012, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, coronary artery disease status-post stent placement, anxiety disorder, post-traumatic stress disorder

("PTSD"), personality disorder with intermittent explosive disorder, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[3] except the claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, sit, stand and walk up to 6 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can be exposed to environments with a moderate (office level) noise but never be exposed to hazards such as dangerous machinery and unprotected heights. The claimant can perform simple, routine tasks that can be learned after a short demonstration or within 30 days. The claimant must avoid production rate or pace work. The claimant would be off-task 5% of the workday, in addition to regularly scheduled breaks. The claimant can perform simple, work-related decisions. The claimant must avoid operating a motor vehicle as a job duty. The claimant can have occasional contact with coworkers but no more than superficial interaction with the public. The claimant can perform work that does not require teamwork, such as on a production line. The claimant can perform work that requires doing the same tasks every day with little variation in location, hours and tasks. The claimant can perform work that is subject to no more than occasional supervision.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 11, 1963 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2012, through March 10, 2018, as directed by the Appeals Council (20 CFR 404.1520(g) and 416.920(g)).

Tr. 1489-1508.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on August 28, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 1509. The ALJ also determined that based on the application for supplemental security income protectively filed on August 28, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ improperly determined Plaintiff's mental RFC based on his own lay interpretation of the raw, clinical objective findings rather than relying on the opinion of any psychiatrist or psychologist. *See* ECF No. 18-1 at 16-28. Plaintiff next argues that the ALJ failed to properly consider Medical Listing 12.04 - Depressive, Bipolar, and Related Disorders, at step three of the sequential process. *See id*. at 28-32.

In response, the Commissioner argues that the ALJ properly evaluated the opinion evidence in assessing Plaintiff's RFC, and the ALJ was not obligated to grant any one opinion controlling weight, or to adopt any one of the opinions in its entirety. *See* ECF No. 19-1 at 10-21. With respect to Plaintiff's second point, the Commissioner argues that substantial evidence, including Plaintiff's history of conservative treatment, his normal mental status findings, and opinions from three medical source indicating less than marked limitations, supported the ALJ's step three finding that Plaintiff did not satisfy Listing 12.04. *See id*. at 6-10.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ properly considered the entire record, and substantial evidence, including the medical opinion evidence, the examination findings, Plaintiff's activities of daily living, and his course of treatment, supports the ALJ's RFC finding for a range of light, unskilled work. Accordingly, the Court finds no error in the ALJ's decision.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between

properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v.*

*Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's argument, the ALJ appropriately evaluated the opinion evidence in assessing Plaintiff's RFC. Tr. 1499-1500. *See* 20 C.F.R. §§ 404.1527, 416.927. Furthermore, the ALJ did not assess Plaintiff's RFC based on bare medical findings and his own lay judgment, as Plaintiff argues. The agency's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Acceptable medical sources include physicians, as well as psychologists, school psychologists, audiologists, podiatrists, and speech language pathologists within their area of expertise. 20 C.F.R. §§ 404.1502(a), 416.902(a).

When weighing medical opinions, an ALJ is required to consider how well the medical source supports his opinion, how consistent it is with the record at large, whether the source has a relevant specialty, whether the source has examined the claimant, and the nature and extent of the treatment relationship, if any. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5). The ALJ must also consider any other relevant factors, such as the medical source's familiarity with the record at large or the Social Security program. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Following the recission of SSR 06-3p, effective March 27, 2017, the Agency's rules do not require any particularized analysis of opinions from non-acceptable medical sources.[4]

---

[4] *See* https://www.ssa.gov/OP_Home/rulings/di/01/SSR2006-03-di-01.html (last visited May 18, 2023); Federal Register Notice Vol. 82, No. 57, page 15263, available at https://www.ssa.gov/OP_Home/rulings/PDF/2017-05959.pdf (last visited May 18, 2023).

Here, the record included three medical opinions speaking to Plaintiff's mental functioning. On February 18, 2016, Plaintiff underwent a psychiatric evaluation with consulting psychologist Gregory Fabiano, Ph.D. ("Dr. Fabiano"). Tr. 454-58. Dr. Fabiano opined that Plaintiff had no or mild limitations in most areas of functioning and only moderate limitation in dealing with stress, and he stated that Plaintiff's psychiatric issues were not significant enough to interfere with his ability to function on a daily basis. Tr. 457. Gerald Koocher, M.D. ("Dr. Koocher"), the medical expert at the hearing, opined that Plaintiff would have no more than moderate level limitations. Tr. 1528-30. On March 3, 2016, state agency consulting psychologist D. Bruno, Psy.D ("Dr. Bruno"), reviewed the contents of Plaintiff's file at the time and concluded that Plaintiff's mental impairments were non-severe. Tr. 67.

The record also included opinions from non-acceptable medical sources, Jenny Bagen, NP ("Ms. Bagen"), Margaret Desmavais, FNP ("Ms. Desmavais"), and Jennifer Giczkowski, FNP ("Ms. Giczkowski"). Ms. Bagen and Ms. Desmavais assessed extreme mental limitations inconsistent with work, while Ms. Giczkowski assessed only moderate limitations. Tr. 268, 487-88, 499, 1257.

In an analysis closely tracking the relevant regulatory factors, the ALJ gave significant weight to Dr. Koocher's opinion and partial weight to the opinions of Drs. Fabiano and Bruno. Tr. 1504-06. With respect to Dr. Koocher's opinion, the ALJ explained that Dr. Koocher was a specialist; had reviewed the entire record; and was familiar with the Social Security program. Tr. 1504. He noted that Dr. Koocher cited objective evidence to support his opinions during his testimony and that the opinion was consistent with Plaintiff's conservative treatment and grossly normal mental status findings throughout the record. Tr. 1504. As to Dr. Fabiano's opinion, the ALJ noted that the Dr. Fabiano was an acceptable medical source who had examined Plaintiff, but

his opinion was based on that single interaction. Tr. 1506. The ALJ found his assessment of moderate limitations in dealing with stress consistent with the record, but not his assessment of no or mild limitations in the other areas. *Id*. As to Dr. Bruno's opinion, the ALJ also noted that he was an acceptable medical source familiar with the Social Security program, but he had no treatment or examination history. Tr. 1505-06. The ALJ further noted that Dr. Bruno's opinion regarding understanding and concentration was consistent with the examination findings, but his other opinions did not adequately consider Plaintiff's irritability and stress intolerance. Tr. 1506.

In addition, though not required to explicitly weigh their opinions, the ALJ considered the opinions from Ms. Bagen, Ms. Desmavais, and Ms. Giczkowski, again following the regulatory factors. Tr. 1504-05. In so doing, the ALJ gave "very little weight" to Ms. Bagen and Ms. Desmavais, and partial weight to Ms. Giczkowski, accepting her well-supported opinions on physical functionality, but rejecting her opinions on mental functionality. Tr. 1504-05. As to all three, the ALJ recognized that they were treating providers with significant treatment histories, but they were not acceptable medical sources or specialists and their opinions were at odds with Dr. Koocher, who was both. *Id*. "[W]hile the ALJ is certainly free to consider the opinion of [non-acceptable medical sources] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008); *see also Taylor v. Colvin*, No. 14-cv-0928 (GTS), 2016 WL 1049000, at *5, 2016 U.S. Dist. LEXIS 31312, at *16 (N.D.N.Y. Mar. 11, 2016) ("an opinion from a nurse practitioner is not a medical opinion that is entitled to any particular weight under the regulations"); *Smith v. Comm'r of Soc. Sec.*, 337 F. Supp. 3d 216, 222 (W.D.N.Y. 2018).

The ALJ also contrasted all three of the nurse practitioners' opinions to the normal mental status findings of record. *Id*. With respect to Ms. Bagen and Ms. Giczkowski, the ALJ noted that their opinions were vague and conclusory; they were not expressed in vocationally relevant terms; and they opined on the ultimate issue of disability, which is an issue reserved to the Commissioner. Tr. 1505. *See* 20 C.F.R. § 404.1527(d) (an opinion on the ultimate issue of disability is not a medical opinion, and is not entitled to any "special significance"); *Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008); *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). The ALJ also noted Ms. Desmavais' statement that Plaintiff "maintains functionality," and there had been no changes in his condition during the approximately one year she had treated him. Tr. 1504, 268.

Instead of identifying anything incorrect in the ALJ's analysis, Plaintiff argues that the RFC finding did not precisely match any one of the above opinions. *See* ECF No. 18-1 at 16-28. However, the ALJ was not required to rely on an opinion that mirrored the RFC, as Plaintiff argues. *See id*. As the Second Circuit recently reiterated, the RFC does not need to exactly correspond to a particular medical opinion. *Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (affirming where the ALJ declined to adopt the limitations set forth in three treating source opinions, and the RFC finding did not match any opinion in the record). Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R.

§§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

In support of his RFC finding, the ALJ highlighted evidence indicating a relatively minor mental impairment. The ALJ pointed to Plaintiff's "routine, limited, and conservative" outpatient mental health treatment and specifically noted that he reported Cymbalta stabilizes his mood and Xanax helps his anxiety. Tr. 1503, 663, 895. *See* 20 C.F.R. §§404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (consideration of medication and other treatment). The ALJ noted that Plaintiff's mental status examination findings were relatively benign, including normal cognitive

functioning, cooperative behavior, good eye contact, no psychomotor agitation, normal speech, intact memory and concentration, and appropriate thought content and processes. Tr. 1503, 496, 538, 602, 673, 832, 945, 1016, 1158, 1226, 1248. The ALJ also noted the findings of Dr. Fabiano, Dr. Koocher, and Dr. Bruno that Plaintiff had mild to moderate limitations in most areas of functioning, as discussed above. Tr. 1503, 67, 457, 1528-30. Despite the minimal limitations this medical evidence would suggest, the ALJ gave Plaintiff the benefit of the doubt and incorporated additional limitations to partially accommodate his allegations. Tr. 1507.

However, the ALJ reasonably did not fully accommodate Plaintiff's allegations, as they were contradicted by his significant daily activities, his decision to cash out his Worker's Compensation claim, and his non-compliance and marijuana abuse. Tr. 1501-02. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore*, 566 F.3d at 307 (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

Furthermore, the ALJ was not required to state on the record every reason justifying his decision. *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal quotation marks and citations omitted). Furthermore, as explained above, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record in its entirety. *See Corbiere v. Berryhill*, 760 F. App'x

54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety); *Veino*, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). So long as the evidence of record permits the court to "glean the rationale of an ALJ's decision," the Second Circuit "do[es] not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). The ALJ's RFC analysis easily passes these tests. Accordingly, the Court finds no error.

In his second point, Plaintiff argues that the ALJ erred in finding that Plaintiff did not satisfy Listing 12.04 at step three of the sequential process. *See* ECF No. 18-1 at 28-32. At step three, the Agency will find a claimant disabled, regardless of age, education, and work experience, if he has an impairment that meets or equals one of the Listings in the appendix. 20 C.F.R. §§ 404.1520(a) (iii), 416.920(a)(iii). The listed impairments are the kind that are permanent or expected to result in death. 20 C.F.R. §§ 404.1525(c)(iv), 416.925(c)(iv). Thus, unless specified, an impairment can only satisfy a Listing if it has lasted, or can be expected to last, for a continuous period of at least 12 months. *Id*. To meet a Listing, a claimant must have a medically determinable impairment that satisfies all of the criteria in the Listing. 20 C.F.R. §§ 404.1525(d), 416.925(d). *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

When a claimant allegedly suffers mental impairments, the ALJ is required to follow a "special technique" at each level of the administrative review process to determine whether the

claimant has any severe mental impairments and whether the impairments meet or equal the Listings. 20 C.F.R. § 404.1520a. Specifically, the ALJ must assess the claimant's degree of functional limitation resulting from a mental impairment in four broad functional areas identified in Paragraph B of the adult mental disorders listings: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

To satisfy the "paragraph C" criteria, a claimant must establish that an impairment is "serious and persistent," evidenced by: (1) a medically documented history of the impairment lasting at least two years; (2) ongoing medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that diminishes the symptoms and signs of the mental disorder; and (3) despite achieving symptom relief, he is marginally adjusted, *i.e.*, he had minimal capacity to adapt beyond what is already in his daily life. Listing § 12.04(C). The Listings clarify that "[w]e will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning." Listing § 12.00(G)(c).

Here, the ALJ's analysis closely tracked Listing 12.04, and the ALJ explicitly found that Plaintiff did not establish either the B or the C criteria. Tr. 1498-99. As to Paragraph B, the ALJ found that Plaintiff had only mild limitations in understanding, remembering, or applying

information; and concentrating, persisting, or maintaining pace, as well as moderate limitations in interacting with others; and adapting or managing oneself. Tr. 1498. As to Paragraph C, the ALJ found there was no evidence of marginal adjustment. Tr. 1499.

Plaintiff argues that the ALJ erred because his step three findings are inconsistent with the significant limitations the ALJ included in his RFC finding. *See* ECF No. 18-1 at 30-31 (citing *Jay v. Comm'r of Soc. Sec.*, No. 17-CV-59S, 2018 WL 3688315, at *3 (W.D.N.Y. Aug. 3, 2018)). Specifically, Plaintiff alleges the ALJ erred at step three in declining to find marked limitations in interacting and relating to others, and the ability to concentrate, persist, or maintain pace. *See id*. Plaintiff's argument is meritless.

As to both areas, the ALJ began by acknowledging Plaintiff's reported difficulty getting along with others; his focus and task completion; and dealing with changes in routine. Tr. 1498, 186, 1538, 1540, 1542-43, 1547. The ALJ also acknowledged that Ms. Desmavais and Ms. Bagen assessed significant limitations in these areas. Tr. 1498, 268, 487-88. However, the ALJ discussed examinations showing that Plaintiff was cooperative, with normal behavior, speech, thought process and content, and concentration. Tr. 1498, 496, 538, 602, 673, 832, 945, 1016, 1158, 1226, 1248. The ALJ also discussed Dr. Bruno's finding that Plaintiff's affective disorder was nonsevere; Dr. Fabian's assessment of no limitations in these areas; and Ms. Giczkowski's assessment of no and moderate limitations in these areas, respectively, and her finding that Plaintiff could perform moderate stress work. Tr. 1498, 75, 457, 499, 1257.

Plaintiff also suggests that the ALJ's analysis was deficient in terms of addressing conflicting evidence and articulating his rationale. *See* ECF No. 18-1 at 28-29 (citing *Easley ex rel. P.S.J. v. Colvin*, No. 13-CV-923S, 2014 WL 5465411, at *3 (W.D.N.Y. Oct. 28, 2014); *Szarowicz v. Astrue*, No. 11-CV-277S, 2012 WL 3095798, at *4–5 (W.D.N.Y. July 30, 2012)).

Although Plaintiff extensively cites to boilerplate language from these two cases, he fails to illustrate how the propositions cited apply to the facts herein. *See generally* ECF No. 18-1 at 28-29. As discussed above, the ALJ relied on three medical source opinions indicating less than marked limitations and essentially normal examination findings in the relevant areas. Thus, the ALJ explicitly articulated his rationale for finding moderate limitations in interacting and relating to others and mild limitations in the ability to concentrate, persist, or maintain pace. Tr. 1498; *see Easley*, 2014 WL 5465411, at *3 (stating that an ALJ must articulate a reasoning or expressly adopt a medical opinion). Similarly, the ALJ explicitly acknowledged conflicting evidence, including Plaintiff's statements and the opinions from Ms. Desmavais and Ms. Bagen. Tr. 1498; *see Szarowicz*, 2012 WL 3095798, at *4–5 (stating that an ALJ should address conflicting evidence). Plaintiff fails to acknowledge the ALJ's thorough analysis, much less explain what is deficient about it. Therefore, his argument fails.

Plaintiff's argument that the ALJ erred because his step three findings were at odds with the RFC limitations likewise fails. As the court acknowledged in *Jay*, "[i]t is well established that a Step 3 determination is not an RFC assessment, but instead is used to rate the severity of mental impairment. A determination made at Step 3 therefore need not carry over verbatim to the ultimate RFC determination because the two determinations require distinct analysis." *Jay*, 2018 WL 3688315, at *3 (citations omitted). Accordingly, any apparent inconsistency between a step three finding and an RFC finding warrants remand only if it "leaves the Court unable to discern the ALJ's reasoning or reconcile [the] inconsistent findings[.]" *Id.* at *4. Such is not the case here. As previously discussed, the ALJ recognized that the medical evidence indicated very little limitation but crafted the RFC to be more restrictive in order to view the evidence "in light most favorable to the claimant." Tr. 1507. Such an explanation accounts for any apparent inconsistency. *Lynneesa*

*M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00971 EAW, 2021 WL 4437184, at *5 (W.D.N.Y. Sept. 28, 2021) (citing *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020)).

As previously noted, Plaintiff bears the ultimate burden of proving that he was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do.

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (holding that "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence," and where the ALJ's analysis permits meaningful judicial review, remand is not warranted solely for a more explicit analysis). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and Plaintiff's daily activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

<u>**CONCLUSION**</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 18) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 19) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE